Good morning. May it please the court, Cameron Garrison on behalf of the appellant, Munchkin, Inc., and I'd like to reserve six minutes if I might. Where I think that the discussion should begin is with what happened before Judge Mattes. We've got proceedings before Judge Mattes in the first trial and then proceedings before Judge Wright in the second. And I'd like to begin my discussion with what happened before Judge Mattes. This was the court in which the case unanimously and consistently came out in Munchkin's favor. A defeat of a temporary restraining order filed by Playtex, a defeat of a preliminary injunction motion filed by Playtex, a successful upholding of that P.I. defeat at the Ninth Circuit, and then a trial, a two-week trial, in which unanimously and overwhelmingly came out in Munchkin's favor. And if we look at what happened before Judge Mattes, we find sufficient evidence to uphold the original jury verdict in its entirety. And that analysis involves looking at first at the jury instruction issue, and specifically the harmless error portion of Playtex's to maintain, to show prejudice, that Playtex failed to meet that burden. That in any event, regardless of where the burden lies, that there could not be a finding of prejudice based on the facts and the jury's decision. That the instruction that Judge Mattes originally gave was the right instruction. There was no error in that instruction. It should not have been reversed. And then finally, that Judge Mattes, in fact, understood and reviewed the standard that was articulated in the R&R sales case that the court has asked the parties to be prepared to discuss today. And as we go through all of those factors, we will find that the result should be that the original verdict before Judge Mattes should be upheld. In turning to the harmless error issue, and whether the instruction, if it was erroneous, was or was not harmless, first we need to understand the proper standard of review. And that standard is a de novo review. There was a dispute in the briefs about this. The Hurd case, the U.S. v. Rodriguez case, show that analysis of a harmless error finding is a de novo review. Understanding that... Well, we grant considerable deference to the district court with regard to ordering a new trial. Yes, Your Honor. The district court thought that the jury award here, I think the term we used was preposterous? Yes, Your Honor. Well, don't we grant deference to his judgment? Well, the order that's in question here, Your Honor, is the order regarding the jury instruction on whether the permissive presumption on whether harm could be found, could be presumed in the case of willful false advertising, deliberate false advertising. That is the new trial order that's at issue here. And that's the order in which initially no harmless error analysis was done, which under the U.S. v. Harmon case is deficient in and of itself. There has to be a harmless error analysis. And then secondly... You don't think the district court undertook that? I think the district court clearly did not undertake it in the initial new trial order. It's not mentioned anywhere in there. There was a reconsideration motion filed by Munchkin, and there was then a passing reference to harmless error. Passing? Munchkin did not present any evidence at trial, expert or otherwise, to demonstrate any actual injury? Yes, Your Honor. It doesn't sound like a passing reference to me. Well, Your Honor, that in fact is not a harmless error analysis. That's a separate analysis. Well, no, no, no. He's saying, how does this jury verdict result? Something's amiss here. You've got this enormous damages award without any evidence of actual injury. How does that not speak to harmlessness? With respect to that particular language, what was being done there was an end round around the normal standard for a new trial order based on the sufficiency of the evidence. That is not what was being done there. In a new trial order for a lack of sufficiency of evidence, the standard is that the verdict needs to be against the great weight of the evidence or quite clear that the jury has reached a seriously erroneous result. That's the Ace v. Aetna case. That analysis was never conducted by the court. There was no discussion, no argument, no analysis on the sufficiency of the evidence issue. The instruction at issue tells the jury that it can presume actual injury. District Court decides that's not a correct instruction. Jury has come back with an enormous award. District Court says there was no evidence of actual injury, and so I infer that the jury must have relied upon this erroneous instruction. The instruction couldn't have been harmless because otherwise the jury couldn't have come back with this enormous award since there was no evidence of actual injury supporting the award. It must have been based on the presumption. That seems to me to speak exactly to the question as to whether the instruction was harmless. Your Honor, with respect to the evidence of injury, there was ample evidence of injury in the record, and I think in considering that it's important to recall there were cross claims in this case. Both sides believe the other proven number one in odor control claim on these competing diaper pails was a false claim, and so both sides were presenting essentially the same case. There was differences in testing. Munchkin believed an analytical test was the appropriate approach. Platex believed that a sensory test was the appropriate approach, and that's where the rub came down, but both sides during the liability phase, now keep in mind trial was bifurcated. I don't hear anything in there supporting the jury quantity award. The quantity award came in the second portion of trial, so trial was bifurcated, so during the liability phase, both sides presented the exact same evidence on injury. The evidence was ample testimony from multiple fact witnesses on both sides that these... That's not injury. That's the alleged false claim. What supports the damages award? So two separate things. So in terms of the injury, what supports that is, again, this is fact testimony, expert testimony, all of this about these claims, dry sayings. No, my question was that's injury. What supports the damage award? And you're going back and talking about injury again. In terms of, if Your Honor's question is what supports the... Because injury has multiple meanings, and I think that the concern that the judge had with the instruction was that it let the jury accept damage allegations without looking for actual proof. And so I would like to address that in a moment because I think the record is clear that the jury did, in fact, conduct a factual analysis. But I want to address Your Honor's previous question about what supports the jury verdict. If the question is what supports it with respect to the dollar amounts, it's the testimony that came in as to Munchkin's past advertising spend. That spent, the money that was spent combating the false ad, that amount was, that amount came out to just over $2 million. And then there was testimony about Munchkin's proposed future advertising spend. Again, it was a corrective advertising theory. You know, without the advertising in the first place, Munchkin wouldn't be in the market. So the sense that this is all corrective advertising is a hard sell. Judge Matt says there's no direct evidence of actual injury. And I think he's referring there to the, not to the question of the competing claims, but to the question of what's the impact of the wrongful claim by Playtex. And I have a hard trouble, I mean, frankly, he seems right to me. I have a hard time figuring out what the basis for that award is, too. Your Honor, you're correct that, and in fact, during the cross-examination on the damages amount, the fact that Munchkin was claiming all of the advertising as having combated the false ad, that was actually raised in detail in cross-examination, and from our perspective, taken into account by the jury, because the jury certainly did not award all of the past advertising that Munchkin had requested. So that fact was taken into, excuse me, taken into account. I'd like to return to the issue of whether or not this error was harmless, and focus on what was before the jury and the decisions the jury made. There were two Playtex products at issue in this case. One was the Diaper Genie 2, and one was the Diaper Genie 2 Elite. Both at one time had carried the allegedly false claim. And the same, of course, instruction was given as to both. If there was willful, deliberate false advertising, injury can be presumed. Well, in the case of each of these two products, the Diaper Genie 2 and the Diaper Genie 2 Elite, the jury found willful and deliberate false advertising. So now this presumptive, permissive presumption comes into play. But in the case of the Diaper Genie 2, the jury went on to find no injury. In the case of the Diaper Genie 2 Elite, the jury went on to find injury. If the jury was simply following the presumption, there is no way that the jury would have found differently as to the Diaper Genie 2 and the Diaper Genie 2 Elite. There was clearly a factual analysis undertaken by the jury. Excuse me, counsel. Is it your position that the Dixie Court was required to make a finding of willfulness, bad faith, or fault in this case? It's our position that if you flash forward to the decision made by Judge Wright as to the damages award and Judge Wright's striking of all of Munchkin's damages theory, yes, under the R&R sales case, there needed to be a finding of willfulness or bad faith on the part of Munchkin in order to sustain an exclusionary order that was tantamount to dismissal of Munchkin's claim. Now you cite that standard in your brief, but your argument focuses entirely on whether the Dixie Court misinterpreted Rule 26. Why shouldn't we conclude you waived that argument? The argument as to whether bad faith was necessary? The argument wasn't waived because, again, we argued before Judge Wright that there was no bad faith. In fact, more importantly, we argued it before Judge Matz because if you look back to the decisions that Judge Matz made, and again, keep in mind, Judge Matz was the judge that lived with this case from the outset. He went through the TRO. He went through the PI. He went through the Ninth Circuit Appeal. He was the judge for all of the discovery, and he was the judge for the sale. Judge Matz clearly was contemplating the standards of R&R sales in making his analysis, and in fact, as Judge Matz was considering this, he ordered the parties to provide specific evidence regarding what had happened in discovery so that he could make that analysis. If you look to Supplemental Excerpt of Record at page 453, lines 16 through 19, Judge Matz says, here's what I want you to give me so I can do this analysis, and so I can, quote, make an informed judgment as to whether Munchkin acted in good faith. But that's not the decision being challenged, right? I mean, you're challenging Judge Wright's exclusionary order, right? Wasn't that based upon a different figure to produce, not the one Judge Matz addressed? No, Your Honor. Was it exactly the same one? It was exactly the same one, and so there was a decision made by Judge Matz first, and that's why, in our mind, you don't even need to get to Judge Wright, because the decisions made by Judge Matz with respect to the jury instruction and the failure to do the harmlessness analysis there, and then Judge Matz's measured approach to the damages and disclosure issue as dictated by R&R sales, when you consider those two things in combination, there's no need to even get to Judge Wright. Now, if you get to Judge Wright, yes, we would agree that Judge Wright clearly did not make a bad faith finding, and so, clearly, there was no, under the R&R sales standard, the exclusionary order that was tantamount to a dismissal was inappropriate. Where did you argue that to us? That's Judge Nelson's question. It was... Where did you argue that to us? Well, I think that it's implicit in the argument that... Your brief doesn't even cite R&R sales. No, Your Honor, it doesn't, but our brief does talk about the standards that Judge Wright considered and that his exclusionary sanction was too harsh, so while it doesn't cite specifically to R&R sales... Cite to the proposition that there has to be a finding of fault or bad faith. Well, again, I think that that was implicit in the argument... Fair. I've looked at your brief. I didn't find any sign of it. Well, again, I can't cite you to a specific portion of the brief, but I think... Then I'll repeat Judge Nelson's question. Why should we take that issue up? Why shouldn't we treat it as waived? Ordinarily, arguments not made in the opening brief aren't taken up by us. Well, Your Honor, I guess I would then ask... I do believe that the argument was implicitly raised in the brief, but I would, if necessary, ask for the opportunity to present that to the court after a more detailed review of that brief, but I do think the argument was raised, and it was raised before Judge Matz. Again, Judge Matz specifically said he was going to make the bad faith analysis. Judge Matz, who had lived with the case, and after reviewing the record, after understanding what happened, he made the decision that he wasn't going to exclude. He made the decision that the violations were not in bad faith, and he made the decision that the measured approach would be to make the adverse instruction to the jury, which he did, and which we believe the jury took into account by awarding far less in damages than what Munch... And which he concluded were obviously insufficient. He thinks the damage award was off the rails. He clearly believed the damages award was off the rails, yet even then, despite that belief, he did not exclude the damages evidence. He had the opportunity during trial, and he had a second opportunity post-trial when it was briefed extensively, and in neither instance did Judge Matz, who held that belief... Well, he ordered a new trial. He did. He ordered a new trial on the jury instruction issue. That means there was going to be a new trial, so there's really not a need to visit or revisit the issue of what evidence was presented during the first trial. The first trial didn't count anymore as far as he was concerned. Well, but the new trial certainly would require presentation of damages, and if he felt the new trial should be excluded, he would have done that as well, so that the parameters of the new trial could be more precisely defined. I mean, this issue was coming back if it wasn't addressed. He had the opportunity twice to address it, knew the case, and chose not to make the exclusionary order that Judge Wright made. I'd like to reserve the rest of my time. You may. Good morning, and may it please the Court. Richard Dorn, on behalf of Apple Lee Playtex Products. I would be happy to discuss any element of the jury instruction issues that the Court would like to hear, but suffice it to say that our position is that Judge Matz was correct and that his ruling and grant of a new trial should be affirmed, and it should also be affirmed. On the jury instruction, the one argument that I heard that I wanted to respond to briefly was the notion that there was clearly an analytical process undertaken by the jury outside of the presumption because of the Diaper Genie 2 being found to not have had injury, have caused injury, while the Diaper Genie Elite did. Well, the reason for that, of course, is that the Diaper Genie 2 did not have the offending claim on it for over two years prior to Munchkin's entry into the market. And what Judge Matz did, having heard this argument, this very argument made in the motions for reconsideration and in opposition to the motion for new trial, was that he said that based on my observation of the witnesses and the evidence, what occurred here is that the jury applied the presumption as to Diaper Genie 2 as well, but then found it rebutted by the fact that that claim was not on Diaper Genie 2 for years before Munchkin came into the market. So that proves no independent analytical analysis in terms of the finding of injury as to Diaper Genie Elite where the jury was explicitly instructed that they could presume injury. And that is what Judge Matz found that they did. And he found that that was an error of fact and law because when he evaluated, there is no acknowledgment and no argument that that presumption is proper in anything other than a direct comparative advertisement setting. And Judge Wright made explicit findings that these were not comparative ads, that in fact the claim on the Diaper Genie product specifically referred to products that used garbage bags or carbon refills, which is specifically not what Munchkin does. The other argument made by Munchkin on appeal is that, well, this is a binary market. There are only two players and therefore you must find that it can be presumed that they are comparative ads. Well, again, Judge Matz specifically considered that ruling on the motion for new trial and found as a matter of fact, based on his observation and assessment of the witnesses and evidence, that it was not a binary market and even if that were the law of the Ninth Circuit, which the only authority cited for it is out of the Second Circuit, would not apply here. Why isn't it a binary market? I mean, are there other competitors for this particular product? There are, Your Honor. First of all, recognize that as I said, the Diaper Genie 2 product itself did not have the claim. And so even within Playtex, there were two diaper pails, one with the claim and one without. And it's very reasonable to assume that when the claim was made on the Diaper Genie Elite, that if it was an effective claim, that it was cannibalizing sales from its own separate, from its own other product. Secondly, we've seen and Judge Matz cited to trial exhibit 1068, which is an internal Munchkin marketing document, which shows that not only were they concerned about Diaper Genie 2, but they were also concerned about other diaper pail companies, including I believe in the case of that instance, the Diaper Champ. Additionally, after this preposterous verdict was issued, a different diaper company filed their own Lanham Act claim against Playtex. That was subsequently dismissed, but it can hardly be a binary contract when competitors are coming out of the woodwork to file their own lawsuits. Diaper pails are the equivalents for a long time. Unfortunately, I'm out of the diaper business a good long time. Say fortunately or unfortunately. Fortunately for my purposes. What I recall about diapers is not the more pleasant part of the parenthood. Maybe grandparenthood lies ahead, I don't know. But the odor control diaper pail, a product I might have wished existed 20 some years ago, that seems to be a change in the market. And these appear to be, I mean, who are the competitors in the market that offers up a diaper pail that not only holds the things, but lets you walk by it without holding your breath? Well, Your Honor, if you look to record excerpt 407, that is the number one marketing claim presented by Munchkin itself. And in Munchkin's claim, they claim superiority to Diaper Genie 2, Diaper Genie 2 Elite, but also Diaper Decor Plus, Diaper Champ, Safety First Easy Saver Diaper Pail, and Safety First Easy Step Diaper Pail. In other words, there are any number of competitors out there, first of all against which they were testing themselves, and secondly against which they were claiming superiority. This is by no means a binary market, and to the extent this question, this court has questions about that, that is a finding of fact by Judge Matz that is subject to a clear error standard of review, which is plainly not met based on the record we have before us. If I may next move to the exclusionary rules, this court is absolutely right that Munchkin does not cite to or argue that R&R Sales has any relevance on appeal. They have waived that argument, and here's why. Their argument on appeal is not that their disobedience is not their fault or that it wasn't willful. Their argument on appeal is that there was no disobedience. Their argument on appeal is that they satisfied their Rule 26 obligations. That is the hook they have hung their hat on, and the record does not support it. But they have not taken the step to say, but if we did, or we beseech the court to have mercy on us for our failings. Instead, they have stood in front of two district court judges, both of which found their conduct to be deplorable and default. So you agree with your opponent that the incidents addressed by Judge Matz and Judge Wright were the same incidents? Your Honor, there are two sets of incidents, some of which were evaluated by both judges and some of which were not. Let me explain. At the first trial, Munchkin never disclosed their damage calculations or their damages evidence until 9 p.m. the night before the damage phase of the trial. Now, climb into Judge Matz's robe for a moment. They just had a seven-day trial on liability. He comes in at 8.30 on the morning that the damages phase of the case is about to begin, and he is told by Playtex's trial counsel that they were presented at 9 p.m. the night before with three spreadsheets, three basically Rule 1006 summary documents with no backup, with no calculations, and with no warning. Those were never disclosed previously. We heard today that corrective advertising in the past was somewhere just over $2 million. I can tell you that their CFO testified in her deposition that the entire amount spent for two years was $1.7 million. We'll get to that in a second. I can tell you that in these Exhibits 608 and 611 that they offered before Judge Matz, they argued that it was $3.9 million, but here we hear yet another number, just over $2 million. This is how this case has gone since day one. Now, let me talk for a moment about that $1.7 million figure, because mind you, they did not assert that in front of Judge Matz, but you've seen in the briefing that that's one of the three theories they asked this court to let them advance. Well, what are you saying? That's something new that was presented to Judge Wright that was not before Judge Matz? Let me back up. I appreciate it. Let me give you the chronology. 9 p.m., the night before the damages phase, they present spreadsheets for the first time that propose total past and prospective corrective advertising of $19 million. That is what they put in front of the jury. They say that Judge Matz never found that that should have been excluded. That's simply not true. What Judge Matz did stuck between the rock and the hard place of having a jury impaneled in this late produced evidence. He gave an adverse instruction to the court, to the jury, where he said specifically that this conduct is not excusable. And when we hear a statement that Judge Matz found that there was no bad faith, that's not true either. What Judge Matz said is that he is not in a position to find intentional bad faith as we sit here, but what you did is nonetheless wrong. But he did not make an express finding of bad faith. Well, Your Honor, if we want to go to the R&R sales standard, I want to make sure that we all understand what we're talking about here. That if there was disobedience, the standard in front of the Ninth Circuit, as set forth in and among other places, Henry v. Gill Industries, which is cited in R&R sales, and also in Virtual Vision, Inc. at 124 F. 3rd, 1140 at 1143, which was authored by Judge Nelson, and the standard is this. Disobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault under this standard in the Ninth Circuit. It's not a finding of evil intent. It's not a finding of an intentional desire to do harm. It is simply that the disobedient conduct not shown to be outside the control of the litigant. And indeed, in NRA PPA Products Liability Litigation, 460 F. 3rd, 1217 at 1242, there the Ninth Circuit found that no reasonable justification for the disobedience is tantamount to a determination of fault. Now, the other reason that Munchkin didn't argue this is because R&R sales tells us that this determination of willfulness, fault, or bad faith is part and parcel of the Rule 37C analysis of substantial justification for the disobedience or harmlessness of the disobedience. And again, they don't argue that their failures were substantially justified. All right, so getting back to my question, you think that's a sufficient finding of bad faith by Judge Matz? Is that what it amounts to? There's a sufficient finding of willfulness, fault, and bad faith by Judge Matz. And specifically, he said it was wrong, unnecessarily belated, and in violation of the applicable discovery rules. What he instructed the jury was, and I found as a result of information I read this morning and in discussions with the lawyers, that the failure of Munchkin to turn over this material on a timely basis was not excusable. Not excusable is saying that it is not outside of their control that the standard set forth by this circuit has not been met in turn. All right, now let me ask my follow-up question then. If that's amounts to a sufficient finding by Judge Matz of bad faith, you think it has any kind of, I don't want to say preclusive, but binding effect on Judge Wright because he's addressing the same situation as is law the case? Not a binding effect, Your Honor. As Judge Clifton said, there's going to be a new trial, and at that point, the trial judge was going to be able to consider what to do about this 9 p.m. production of incomplete and inadequate Rule 1006 summaries. Now let me point this out. There was a year between the day that verdict was issued and the retrial. Now, never mind what I would do. Let me tell you what didn't happen. None of the backup for those spreadsheets were produced at any time between the first trial and the date for the retrial. None of the calculations, none of the rationale. And Judge Wright looked at that and said, I don't get it. You put these out at 9 p.m. the night before the damages claim, and now you're coming in here again without having done anything regarding your Rule 26 obligations and you want to use them again? And let me quote Judge Wright at excerpt of Record 40, Munchkin did literally nothing in terms of Rule 26 disclosures regarding their theories of damages, and I am astonished. I really am, because it is not as though this is a brand new rule. Now you'll notice in their briefs, they do not defend the exhibits that they put forth in the first trial. They do not tell you that they were proper. They do not say that they should be permitted to advance those in the second trial, and that's because they're indefensible. The other thing they do not defend this court is the second exhibit that they sent over a few weeks before the retrial, where that $19 million number went to $71 million. Again, based on the addition of new categories and new numbers with no backup and no explanation. That, by the way, was a year and a half after the close of discovery in this case, and after the case had already been tried once. So that's what Judge Wright was confronted with, and Judge Wright excluded both of those. Let's talk now about the By the way, by the way, one other point of law I want to make sure this court is very clear with and very comfortable with. We do believe, and I think it is clear, that both Judge Wright and Judge Matz made the necessary findings under the R&R sales and Henry standard. And let me stress one more time. I know you heard it, but let me be clear. The standard is not bad faith, standing alone in some common law concept. It's willfulness, fault, or the bad faith. And all that is required to satisfy that is that the disobedience not be the result of forces outside of the control of the disobedient party. And no argument has been made, no evidence has been offered that it was. Now Judge Matz found that, and Judge Wright found that, but this court has also said. When you say Judge Wright found that, can you show me where his finding is? Judge Wright found at Excerpt of Record 40 that Munchkin did literally nothing in terms of Rule 26 disclosures regarding their theories of damages, and they were astonished. Now, as I said, it's Munchkin's obligation to come forward and prove under the harmless and substantial justification standard, because in R&R sales this circuit said that the willfulness, fault, and bad faith analysis is part of the substantial justification or harmlessness analysis. And that's at 1246 is the statement on the burden, and 1247 is the statement that includes this willfulness, fault, or bad faith standard within the substantial justification standard. Now... Counsel, under R&R sales, however, the conclusion of the court in that case was because it does not appear that a district court conducted inquiry that they talked about, and because it did not make the requisite findings, it erred when it excluded the invoices and so forth. Your Honor, thank you for raising that issue. Two comments. First of all, let me take you to the law of the Ninth Circuit as actually, again, as commented on by Your Honor in In Re Virtual Vision 124F3rd, and this specific quote is from 1143 to 1144. There Your Honor said that the critical question is whether there is record evidence that noncompliance was due to willfulness, bad faith, or fault as I've just defined it, not whether the trial court made a finding to that effect. So first of all, we do think that Judge Mance and Judge Mance made the requisite findings. Second of all, if they didn't, or if this court concludes it wants to review the record to make sure, to see if those findings were supported, it may. What occurred in R&R sales is you had a fully disclosed theory of damages, even with the number and with the basis for that exclusion. We will support this with attorney invoices. And then there were delays with the production of the invoices, and there were discussions about what the redactions requirements were, and they were finally produced two weeks before trial, the first trial I might add. And the question was whether or not the preclusion of that, which did in that case cause the dismissal of not just the Brant v. claim, but also a punitive damage claim, whether or not there were sufficient findings to be made. And on that record, in that case, based on the facts I just described, they concluded that they could not determine that, and they remanded it. In this case, that need not be the case. And that again is virtual vision, and it's also Vulcan Group 552F Federal Appendix 644, where the statement is explicit findings by the district court are not required. Rather, we may independently review the record to determine whether the Munchkin case, noted in footnote one of R&R sales, where it says there the exclusion of damages evidence did not constitute the dismissal of the case as a whole, and therefore R&R sales did not even apply. That is the case here, because there was an injunctive relief claim that Munchkin elected to abandon rather than to proceed to trial on, despite the dismissal of their damages claims. That's another reason they didn't argue R&R sales. It has no application here because there were other claims that they elected not to pursue. They've waived it for numerous reasons, and they've waived it for tactical reasons. Now, I only have 16 seconds left, so let me just point out that the three theories they seek to advance on a retrial, we have described in chapter and verse in our briefing how they were disclosed. It's embarrassing. The $75 million claim that they want to use as a proxy for lost profits by Playtex is a gross number that was first disclosed as a basis for a calculation at 5 o'clock on Sunday, April 28th, before the April 30th trial. The goal was to put it on the overhead projector and make it our problem, and Judge Wright stopped it and he did so properly. And we've addressed the complete lack of disclosure on the other two bases as well, neither of which were pursued in the first trial or disclosed before the trial. Thank you. Thank you. I think I probably should pick up where Mr. Doran left off, which is talking about the various theories of damages and reflecting on what actually was disclosed with respect to each of those theories. There's a detailed discussion of this at pages 93 through 163 of the excerpt of records. That was the filing Mr. Doran referenced on April 28th, but it was not a first disclosure. It was a detailing of prior disclosures. There are four different categories of damages, three or four depending on how you look at them. First, past advertising spend by Munchkin. This was disclosed and discussed in detail during discovery, during the deposition of Margaret Harden, the witness who testified about this at trial. Ms. Harden disclosed Munchkin's past advertising spend. She underreported it during her deposition, but she disclosed it. She actually asked for more at trial and was cross-examined extensively on that. The information she had in her deposition was incomplete. That's one category. The discovery was taken on, deposition questions were asked on, the disclosure was made. The second category is Munchkin's future advertising spend. The proposed, here's what we would like to do in the marketplace to correct the false claims. That is necessarily hypothetical. What Munchkin disclosed during the case was, both during the mediation and in its expert report, was its intention to seek an amount equivalent to Playtex's advertising spend, which was $30 million. At trial, Munchkin actually reduced that and sought $19.2 million instead. The documents that were referred to that were produced at 9 o'clock the night before, those were not substantive documents, those were demonstratives that outlined the testimony that Ms. Harden was going to offer, seeking the $19.2 million as opposed to the $30 million in Playtex's own advertising spend that Munchkin had identified during the course of the case. Then third was disgorgement of Playtex's profits. Disgorgement was identified by Munchkin in each and every one of its Rule 26A1 disclosures throughout the case. Munchkin chose not to pursue disgorgement during the first trial, but it was disclosed in each and every one of the Rule 26A1 disclosures. Disclosed in anything more than a theoretical or descriptive fashion? I mean, it might be a line, disgorgement of profits, is that where it ended? It was, it specifically referenced 15 U.S.C. 1117. Was there ever an amount of money cited? No, Your Honor, because... When was the amount of money first cited? The amount, again, 15 U.S.C. 1117. When was the amount of money first cited? In the disclosure, in a Rule 20, supplemental Rule 26 disclosure prior to the second trial. But the statute... How long prior to the second trial? I don't know the exact date. It was, I believe, a month or six weeks before. Just picking up from your brief, grasping at straws is a phrase that comes to mind when you're talking about disclosure via things said in the course of a mediation. I've got to say, I'm not impressed by the responsiveness of your client to their obligations under Rule 26. I understood, Your Honor, and I apologize if that's the Court's perception, but from my client's perspective, the disclosures have been made. Again, the... Well, then why does the brief wind up talking about things that are said in the course of a mediation? I mean, if you've got chapter and verse of how proper disclosures were made, I would have expected to read about that in the brief, and that's not what I read about. Well, it wasn't just the mediation. It was in the expert disclosure, Your Honor. There was a specific reference to it in the expert disclosure, and there was never any question from Playtex about, wait, what is this? We haven't heard about this before. They were silent as to it until after they'd lost the case and were coming up with ways... When was the $71 million first disclosed? The specificity of that was the Rule 26 disclosure that I was just referencing. I don't know the exact date... Disclosed as a $50 million item? The $71 million... No, right? Your Honor, the $71 million consisted of the corrective advertising proposal as well as disgorgement, which, again, had been disclosed in each of the Rule 26A1 disclosures, including a reference to the statute which specifically says it should be presented in the amount of the plaintiff's... When you say disclosed, you mean dollar sums? Dollar sums was not specifically disclosed until the 26A1 disclosure approximately a month... I may be off by a week or so, approximately a month before the second trial. So you think you comply with your disclosure obligation if you say we're going to seek disgorgement? That's sufficient? When you reference 15 U.S.C. 1117A, which specifically says plaintiff presents only the amount of defendant's sales, and then defendant is then obligated to present the amount that's statutorily set out. So by referencing that statute, yes, in our opinion, we had fully disclosed the amount. We said we were going to follow the statute. So if we differ with you on whether that amounts to disclosure, then you should lose, right? I'm sorry? If we differ with you on whether that's sufficient disclosure under Rule 26, then you should lose. As to disgorgement, yes, but still, as to the corrective advertising, we again believe that that was properly disclosed. And when was the amount disclosed? The amount of corrective advertising, again, during the mediation and in the expert report, what was said is that Munchkin and Tamsen— So your position is if you or your client says something during the mediation to the mediator, then that's sufficient disclosure under Rule 26? No, Your Honor, I would agree that wouldn't be. But you just said, isn't it? No, I'm sorry. Your Honor, what was—the disclosure in the mediation was during a general session in which Ms. Rader presented that theory during the general session. I would agree with Your Honor if it was just said to the mediator that it would be insufficient. But the case law cited in our brief shows that a disclosure during a settlement conference such as that, if it's communicated to the other side, is sufficient. But that disclosure doesn't stand alone. That disclosure was backed up, again, by an expert report that specifically referenced it and to which no question was ever raised by Playtex until after they lost the case. We thank you for your argument. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Nelson, Tashima, Clifton